**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------
**JACQUELYN WHITE,**

                         **Plaintiff,**        08 Civ. 0993 (JGK)

      - against -             **MEMORANDUM OPINION AND**
                                                              **ORDER**
**DEPARTMENT OF CORRECTIONAL SERVICES**
**("DOCS"), et al.,**

                         **Defendants.**
-----------------------------------------------------------

**JOHN G. KOELTL, District Judge:**

     The plaintiff, Jacquelyn White, a female corrections officer at the Lincoln Correctional Facility in New York State ("Lincoln"), brings this employment discrimination action against New York State, the New York State Department of Correctional Services (the "DOCS"), and individual defendants Joseph Williams, Nicholas Brocco, Salvatore Munafo, Ronald Haines, George Van Valkenburg, and Robert Murray, all of whom were employed by the DOCS as supervisory officers at Lincoln during the relevant time period. The individual defendants are being sued in their official and individual capacities.

     The defendants move pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) to dismiss the action in part.

1

I

On a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In considering such a motion, the Court generally must accept the material factual allegations in the Complaint as true. See J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004). The Court does not, however, draw all reasonable inferences in the plaintiff's favor. Id.; Graubart v. Jazz Images, Inc., No. 02 Civ. 4645, 2006 WL 1140724, at *2 (S.D.N.Y. Apr. 27, 2006). Indeed, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists. See APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003); Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998); Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986). In doing so, the Court is guided by that body of decisional law that has developed under Federal Rule of Civil Procedure 56. Kamen, 791 F.2d at 1011; see also Melnitzky v. HSBC Bank USA, No. 06 Civ. 13526, 2007 WL 1159639, at *5 (S.D.N.Y. April 18, 2007).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the Complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the Complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Twombly v. Bell Atlantic Corp., 127 S. Ct. 1955, 1974 (2007); see also Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007).

On a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the Complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Kavowras v. New York Times Co., 328 F.3d 50, 57 (2d Cir. 2003); Taylor v. Vermont Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002); Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993); Kramer v. Time Warner,

Inc., 937 F.2d 767, 773 (2d Cir. 1991); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991).

While the Court should construe the factual allegations in the light most favorable to the plaintiff for purposes of Rule 12(b)(6), the Court is not required to accept legal conclusions asserted in the Complaint. See Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007); Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002).

II

A

For purposes of this motion, the Court accepts as true the following facts as alleged in the Complaint.  At all relevant times, the plaintiff was and is a female employee of the DOCS. She began her employment in 1986 at Bedford Hills Correctional Facility as a corrections officer.  In 1992 she transferred to Lincoln, where she took the position of Relief Officer for the Release Process Booth and Officer in Charge post.  In August 2004, the defendants ordered the painting of an area near the Release Process Booth.[1]  The plaintiff complained to her supervisors, including defendant Munafo, about the fumes from

---

[1]  Unless otherwise noted, references to "the defendants" indicate that the plaintiff has not distinguished among the various defendants in making a particular factual allegation.

4

the paint.  After the defendants refused to stop the painting, the plaintiff filed a complaint with the Occupation and Safety and Health Administration (OSHA) regarding possible health risks associated with the painting and the defendants' failure to post any warning about the fumes or potential health hazards.  The defendants, after learning about the OSHA complaint and apparently worried about possible problems with OSHA, ordered the painting to cease.  (Compl. ¶¶ 14, 25, 24, 26-30.)

Over a year passed, and around February 2006, the plaintiff notified her Union, the New York State Corrections Officer and Police Benevolent Association ("NYSCOPBA"), that defendants Haines, Munafo, Van Valkenburg and other supervisors were living in the basement of Lincoln with the approval of defendant Brocco and in violation of Directive 4005.  The Union subsequently filed a complaint with Lincoln based on this information.  (Compl. ¶ 31.)

On May 3, 2006, Lincoln posted a job for assignment at the Release Process Booth/Officer in Charge post, Tour II, Squad 8 (the "May bid position").  The job posting requested bids from male officers only, even though such positions had previously been open to both male and female officers, and female officers had been performing the duties required for the May bid position for some time.  These duties included taking urine samples from, and performing strip frisks of, inmates at Lincoln.  Typically,

5

female officers requested the help of male officers in performing these duties with respect to male inmates, and male officers requested the help of female officers in performing the same duties with respect to female inmates.  The plaintiff has performed all of the duties required for the May bid position and has sought the help of an available male officer when appropriate.  As of May 3, 2006, no inmates or officers had complained to Lincoln about the manner in which Release Process Booth officers perform urine tests or frisks.  (Compl. ¶¶ 36, 40, 32-25, 38, 37, 41.)

Despite the request for only male applicants, the plaintiff applied for the May bid position.[2]  According to the plaintiff, she was the most senior officer who applied and therefore, pursuant to a collective bargaining agreement between the State of New York and her Union (the "CBA"), the most qualified applicant.[3]  However, the plaintiff's application received the notations "Unsuccessful" and "Not allowed," and she was denied the position.  In July 2006, the plaintiff filed a gender discrimination complaint with the New York State Division of Human Rights (the "NYSDHR") that was cross-filed with the Equal

---

[2]    The Complaint does not clearly explain how the position the plaintiff held as Relief Officer for the Release Process Booth/Officer in Charge post differed from the May bid position.  However, according to the New York State Division of Human Rights' Determination and Order after Investigation (Dawkins Decl. Ex. D), the bid position was a permanent position at the Release Process Booth.

[3]    It should be noted that the New York State Division of Human Rights found that the male officer who was ultimately "placed into" the bid position had more seniority than the plaintiff. (Dawkins Decl. Ex. D.)

Employment Opportunity Commission (the "EEOC").  In April 2007, the plaintiff complained to the defendants and to her Union about gender discrimination and the posting of the May bid position for males only.  (Compl. ¶¶ 41-44.)

From May to August 2007, the plaintiff was subjected to three disciplinary measures from her employer.  The first was a Notice of Discipline, on May 29, resulting from a complaint filed by defendant Haines.  In his complaint, defendant Haines alleged that the plaintiff had left her post without authorization and was found in the Release Processing Booth, where she had no business being.  Defendant Haines also accused the plaintiff of insubordination for failing to leave the Release Processing Booth area in a timely manner.  A few days later the plaintiff filed a grievance through her Union with respect to the May 29 Notice of Discipline.  (Compl. ¶¶ 45-46.)

On May 31, defendant Van Valkenburg issued the second disciplinary measure — a formal counseling letter to the plaintiff regarding an entry she made in the logbook.  Defendant Brocco notified the plaintiff in July that he would not remove the counseling letter from her personnel folder.  (Compl. ¶¶ 47-48.)

The third disciplinary measure occurred in August 2007.  Around August 18, defendant Haines issued a formal counseling memorandum to the plaintiff for allegedly allowing an inmate to

7

leave Lincoln without proper authorization, although the plaintiff alleges that she was not responsible for permitting the inmate to leave the facility. (Compl. ¶ 49.)

On September 24, 2007, the plaintiff received an "Excellent Performance Rating" from her immediate supervisor, defendant Murray, for her service from May 19, 2006 to May 19, 2007. This rating denotes that an employee "always meets and frequently exceeds performance expectations for all tasks" and that the employee "is performing better than expected for many of the tasks and is recognized as a particular asset to the work unit." Although he gave the plaintiff a positive review, defendant Murray stated in the same evaluation that the plaintiff "appears to be more intent in creating disharmony in her workplace." (Compl. ¶¶ 50-51.)

In November 2007, the defendants posted another position for assignment in the Release Process Booth/Office in Charge post (the "November bid position"), although apparently this posting lacked the males-only restriction. The plaintiff and another officer applied for the position. Although the plaintiff had at least six more years of seniority than the other officer, she was denied the position in January 2008. The defendants continued to post the November bid position after denying it to the plaintiff. The defendants have continued to

8

deny the plaintiff the November bid position.  (Compl. ¶¶ 52-54, 56.)

On September 13, 2007, the New York State Division of Human Rights found that there was no probable cause to believe that the DOCS had engaged in or was engaging in the unlawful discriminatory practices complained of.  (Dawkins Decl. Ex. D.)  On October 29, 2007, the EEOC issued a right-to-sue letter to the plaintiff.  (Compl. Ex. A.)  On January 13, 2008, the plaintiff filed her complaint in this Court.

B

The plaintiff originally alleged seven causes of action in this case, three of which are at issue on this partial motion to dismiss.[4]  First, the plaintiff asserts a hostile work environment claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), against New York State and the DOCS  (Count II of the Complaint ("Count II")).  Second, the plaintiff asserts a claim for the alleged deprivation of her constitutional rights, pursuant to 42 U.S.C. § 1983, against the individual defendants in their individual

---

[4] The plaintiff withdrew her claim for negligent hiring (Count VII) and her breach of contract claim (Count VI) in her opposition papers and at oral argument, respectively.  The defendants have not moved to dismiss the plaintiff's claim for gender discrimination under Title VII (Count I) or her claim for a permanent injunction (Count IV).

capacities (Count III).[5]  Third, the plaintiff re-alleges the foregoing claims against all defendants in substance under the New York State Constitution (Count V).[6]

The Court considers each of the plaintiff's claims in turn.

III

The plaintiff brings a hostile work environment claim against New York State and the DOCS pursuant to Title VII.  The defendants argue that the Court lacks jurisdiction over this claim because the plaintiff has not exhausted the administrative remedies available to her, and that the plaintiff has failed to state a claim for a hostile work environment in any event.

At oral argument, the plaintiff requested leave to re-plead her hostile work environment claim as a retaliation claim based on the disciplinary measures issued against her by the defendants from May to August 2007 and the performance evaluation she received in September 2007.  These alleged retaliatory acts occurred after the plaintiff filed her employment discrimination charge with the New York State Division of Human Rights and the EEOC in July 2006.  A claim alleging retaliation that occurred subsequent to and as a result

---

[5]   The plaintiff has withdrawn this claim against the individual defendants in their official capacities.
[6]   The plaintiff has withdrawn her original claims under the New York State Human Rights Law, N.Y. Exec. L. § 296, against all defendants (Count V).

of the filing of an EEOC charge is not barred by the failure to exhaust such a claim by including it in the EEOC charge. See Butts v. City of New York Dep't. of Hous. Pres. & Dev., 990 F.2d 1397, 1401-03 (2d Cir. 1993) (abrogated on other grounds by 42 U.S.C. § 1981).  Therefore, the plaintiff's hostile work environment claim is dismissed without prejudice to re-pleading.

IV

The plaintiff claims, pursuant to 42 U.S.C. § 1983, that by allegedly discriminating against her and subjecting her to a hostile work environment, the individual defendants violated her constitutional rights to due process, equal protection, and free speech under the Fourteenth Amendment and the First Amendment as applied to state action under the Fourteenth Amendment.[7]  In order to state a claim under § 1983, a plaintiff must allege a violation of a right secured by the Constitution or laws of the United States and must show that the alleged violation was committed or caused by a person acting under the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Gomez v. Toledo, 446 U.S. 635, 640 (1980); Adickes v. S.H. Kress & Co.,

---

[7] The plaintiff also invokes the Fifth Amendment in support of her free speech claim, but her claim is properly governed by the First Amendment as applied under the Fourteenth Amendment.  In addition, the plaintiff asserts in the course of her § 1983 cause of action that the defendants deprived her of her civil rights as guaranteed under the New York State Constitution.  However, § 1983 only concerns rights secured by the federal Constitution or federal laws, not state laws.  See, e.g., Baker v. McCollan, 443 U.S. 137, 142 (1979).

398 U.S. 144, 150 (1970).  There is no dispute that the individual defendants were acting under color of state law when they denied the plaintiff the May and November bid positions, or that they were personally involved in the conduct that the plaintiff alleges was unconstitutional.  However, the defendants argue that the plaintiff has failed to state a claim for the alleged violation of her constitutional rights.  The Court addresses the plaintiff's due process, equal protection, and First Amendment claims in turn.

A

In her Complaint, the plaintiff alleges that the individual defendants violated her due process rights by depriving her of her right to be free from discrimination based on gender. However, an allegation of gender discrimination alone, without more, does not support a procedural due process claim for employment discrimination.  See, e.g., Pierce v. Netzel, No. 98 Civ. 532A(F), 2004 WL 1055959, at *7 (W.D.N.Y. May 10, 2004) ("No claim for employment discrimination lies under § 1983 based on a due process violation unless the plaintiff had a protectable interest in continued employment.") (citing Abramson v. Pataki, 278 F.3d 93, 99) (2d Cir. 2002).

At oral argument, the plaintiff requested leave to re-plead her due process claim as a procedural due process claim based on

12

the denial of an employment position to which she was contractually entitled under the CBA.  In order to claim a property interest for due process purposes, a plaintiff must demonstrate a legitimate claim of entitlement to the property interest or benefit at issue.  See, e.g., Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972); Abramson, 278 F.3d at 99.  Such a claim may arise by contract, including a collective bargaining agreement.  See Ciambriello v. County of Nassau, 292 F.3d 307, 313-14, 318 (2d Cir. 2002).  Therefore, it may be possible upon re-pleading for the plaintiff to state a procedural due process claim.  Accordingly, the plaintiff's due process claim is dismissed without prejudice to re-pleading.[8]

B

The plaintiff alleges that the defendants violated her rights under the Equal Protection Clause by willfully and deliberately discriminating against her based on her gender and retaliating against her for opposing discrimination and other workplace violations.

---

[8]    The plaintiff appeared to abandon any claim for the violation of her substantive due process rights at oral argument.  The current Complaint does not allege any plausible claim for a violation of substantive due process. See Smith v. Half Hollow Hills Cent. Sch. Dist., 298 F.3d 168, 173 (2d Cir. 2002) ("The protections of substantive due process are available only against egregious conduct which . . . can fairly be viewed as so brutal and offensive to human dignity as to shock the conscience.") (internal quotation marks omitted); Local 342 v. Town Bd. of Huntington, 31 F.3d 1191, 1196 (2d Cir. 1994) ("[S]imple, state-law contractual rights . . . are [not] worthy of substantive due process protection.").

13

The Equal Protection Clause protects "public employees from various forms of discrimination, including hostile work environment and disparate treatment, on the basis of gender." Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006). In asserting an equal protection claim based on disparate treatment, a plaintiff must show that (1) she is a member of a protected class; (2) her job performance was satisfactory or that she was qualified for the position sought; (3) she suffered an adverse employment action; and (4) the action "occurred under conditions giving rise to an inference of discrimination." Id. at 151. See, e.g., Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003); Jessamy v. City of New Rochelle, 292 F. Supp. 2d 498, 515 (S.D.N.Y. 2003). To satisfy element (4), a plaintiff may show that her employer "treated [her] less favorably than a similarly situated employee outside [her] protected group." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000).

The plaintiff has stated a cognizable equal protection claim. She alleges that she was denied the May bid position because she was female, despite being qualified for the position. The reconfiguring of the bid position in May 2006 as open exclusively to male applicants and the notation of "Not allowed" on the plaintiff's application certainly give rise to an inference that the denial of the May bid position was based on the plaintiff's gender. Moreover, in their motion to dismiss

14

the defendants do not raise any arguments with respect to whether the denial of the plaintiff's application for the May bid position was based on the plaintiff's gender.  The defendants also failed to raise any such arguments at oral argument.  Indeed the defendants have not moved to dismiss the first cause of action in which the plaintiff alleges gender discrimination in violation of Title VII.  Therefore, the plaintiff has stated an equal protection claim at least on the basis of the denial of her application for the May bid position, and it is unnecessary on this motion to dismiss to address the defendants' arguments that other alleged acts by the defendants do not provide a basis for an equal protection claim.

C

The plaintiff alleges that the individual defendants deprived her of her First Amendment right to free speech.  However, the nature of the plaintiff's free speech claim is not clear from the Complaint.  The plaintiff may be able to allege a First Amendment claim against the individual defendants based on their alleged acts of retaliation against her for various complaints that she made at Lincoln.  But the Complaint does not make clear that the plaintiff's First Amendment claim is based on her allegations of retaliation.  Moreover, the Complaint does not allege that the defendants committed any retaliatory act

15

that "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 225 (2d Cir. 2006) (internal quotation marks omitted).  Such an allegation would be necessary to set forth a First Amendment claim based on retaliation.  See, e.g., Ford v. Reynolds, 167 Fed. Appx. 248, at *2 (2d Cir. 2006) ("The allegation of a chill is indispensable for private plaintiffs.") (citing Morrison v. Johnson, 429 F.3d 48, 51 (2d Cir. 2005)).

At oral argument, the plaintiff clarified that she intended to base her First Amendment claim on the defendants' alleged retaliatory acts and requested leave to re-plead her First Amendment claim.  Because it may be possible for the plaintiff to state a First Amendment claim based on the defendants' alleged retaliatory acts, the plaintiff's First Amendment claim is dismissed without prejudice to re-pleading.

V

In Count V, the plaintiff asserts state law claims for money damages under the New York State Constitution against New York State, the DOCS, and the individual defendants in their official and individual capacities.  The plaintiff's state law claims parallel her federal claims discussed above.

The claims in Count V must all be dismissed for lack of jurisdiction.  First, the plaintiff's state law claims against New York State and the DOCS are barred by the Eleventh Amendment.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).  Second, the plaintiff's state law claims against the individual defendants in their official capacities are also barred by the Eleventh Amendment, because these are equivalent to claims against the state.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office.  As such, it is no different from a suit against the State itself.") (internal citation omitted).[9]  Third, the plaintiff's state law claims against the individual defendants in their individual capacities are barred by New York Correction Law § 24.  See Baker v. Coughlin, 77 F.3d 12, 15 (2d Cir. 1996) ("[Section] 24(2) requires that state law claims for damages against corrections officers shall be brought as claims against the state.  This provision, by its plain terms, precludes the assertion of claims against corrections officers in any court,

---

[9]  State officials may be sued in their official capacities for prospective injunctive relief from violations of federal law.  See Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004) (citing Ex parte Young, 209 U.S. 123 (1908)).  However, Count (V) is for money damages.  The plaintiff does not appear to seek an injunction against the individual defendants in their official capacities.  Moreover, the defendants have not moved to dismiss Count IV of the Complaint, which seeks an injunction against Lincoln and the DOCS from violating federal law.

including the federal courts.") (internal quotation marks, ellipses, and alterations omitted). Therefore, the plaintiff's claims under the New York State Constitution are dismissed.

## CONCLUSION

For all of the foregoing reasons, the defendants' partial motion to dismiss is **granted in part** and **denied in part**, as discussed above. Any amended complaint must be filed by **May 1, 2009**. The Clerk is directed to close Docket No. 13.

SO ORDERED.

Date: March 28, 2009
New York, New York

_____
John G. Koeltl
United States District Judge